# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| QUICKSILVER RESOURCES, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-08-868 |
| | § | |
| EAGLE DRILLING, LLC AND EAGLE | § | |
| DOMESTIC DRILLING OPERATIONS, LLC, | § | |
| | § | |
| *Defendant* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is plaintiff Quicksilver Resources, Inc.'s ("Quicksilver") motion for partial summary judgment as to defendants Eagle Drilling, LLC ("Eagle") and Eagle Domestic Drilling Operations, LLC ("EDDO"). Dkt. 12. Having considered the parties' pleadings and arguments, the summary judgment evidence, and the applicable law, the court finds that Quicksilver's motion for partial summary judgment as to both defendants should be DENIED.

Also pending before the court is EDDO's motion for partial summary judgment. Dkt. 23. Having considered the parties' pleadings and arguments, the summary judgment evidence, and the applicable law, the court finds that EDDO's motion for partial summary judgment should be GRANTED.

Lastly, pending before the court is Eagle's motion to transfer venue to the United States District Court for the Western District of Oklahoma or, in the alternative, to dismiss the case. Dkt. 18. Having reviewed the motion, all responsive pleadings, the submitted evidence, and the applicable law, the court finds that Eagle's motion to transfer and alternative motion to dismiss should be DENIED.

## BACKGROUND

On March 8, 2006, Quicksilver and Eagle entered into three International Association of Drilling Contractors drilling contracts ("IADC Contract(s)") covering rigs fourteen, fifteen, and sixteen under which Eagle was to perform drilling services for Quicksilver in connection with their natural gas exploration and production operations in Texas. Eagle was to assemble each of the three rigs and commence drilling operations on July 20, 2006, for rig fourteen ("Rig Fourteen"), October 20, 2006, for rig fifteen ("Rig Fifteen"), and January 20, 2007, for rig sixteen ("Rig Sixteen"). Dkt. 13, Exs. 1-3. In May 2006, at the request of Quicksilver, Eagle delivered Rig Sixteen out of order and commenced drilling services owed under the Rig Sixteen IADC Contract. Dkt. 13. Consequently, and by agreement of the parties, Rig Fourteen became due on Rig Sixteen's originally expected commencement date of January 20, 2007. Dkt. 15, Ex. A-4. Despite some temporary downtime due to mechanical difficulties, Rig Sixteen successfully drilled to the total depth required by the IADC Contract. Dkt. 13.

On August 25, 2006, Eagle assigned all of its rights, title, and interest in the IADC Contracts to EDDO. Dkt. 23, A-1. Three days later, Rodney Thorton, on behalf of Eagle, notified Quicksilver in writing that the IADC Contracts had been assigned. Dkt. 23, Ex. B. On September 13, 2006, after experiencing mechanical problems with Rig Sixteen, Quicksilver contacted Blast Energy Services ("Blast"), EDDO's parent company, to express its concern about EDDO's future operations of Rigs Fourteen and Fifteen. Dkt. 13, Ex. 4. On October 4, 2006, Quicksilver communicated to EDDO that it would accept delivery of Rigs Fourteen and Fifteen if EDDO could provide assurances that the rigs would be in compliance with the IADC Contracts. Dkt. 13, Ex. 4. Quicksilver also requested the opportunity to have the rigs inspected by a certified inspector prior to delivery. *Id.* Although EDDO

invited Quicksilver to inspect the rigs at any time, Quicksilver never sent an inspector. Dkt. 13, Ex. 4. Shortly after October 4, 2006, Quicksilver learned that Rig Fourteen was equipped with a Chinese replica of a Lee C. Moore derrick, not an authentic Lee C. Moore derrick as required by the IADC Contract. Dkt. 12, Ex. C.

Thereafter, Quicksilver filed the current action against EDDO and Eagle on October 13, 2006, in the 342d Judicial District of Tarrant County, Texas, alleging negligence and breach of the IADC Contracts. Dkt. 20, Ex. 10. On December 18, 2006, Eagle filed its answer and a motion to dismiss the Tarrant County action. Dkt. 20, Ex. 12. In January 2007, EDDO filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court for the Southern District of Texas, Houston Division ("Southern District Bankruptcy Court").[1] Dkt. 18. Quicksilver then removed the instant action against EDDO and Eagle from Tarrant County to the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division ("Northern District Bankruptcy Court") on February 27, 2007. Dkt. 24. EDDO then filed a motion in the Northern District Bankruptcy Court to transfer venue to the Southern District Bankruptcy Court.[2] Dkt. 26, Ex. 4. The Northen District Bankruptcy Court granted EDDO's motion, and the case was transferred to the Southern District Bankruptcy Court on May 30, 2007. Dkt. 26, Ex. 4.

---

[1]   EDDO's bankruptcy case was jointly administered with the bankruptcy case of its parent company, Blast under Case No. 07-30426-H4-11.

[2]   Quicksilver filed a response and opposed EDDO's motion to transfer venue to the Southern District Bankruptcy Court. Dkt. 20, Ex. 14. Eagle, however, took "no position" and reserved the right to argue that paragraph eighteen of each IADC Contract requires the action to be pursued in Oklahoma state court. Dkt. 26, Ex. 5. Paragraph eighteen provides:

> GOVERNING LAW:
> This contract shall be construed, governed, interpreted, enforced and litigated, and the relations between the parties determined in accordance with the laws of Cleveland County, State of Oklahoma.

Dkt. 27, Ex. 1. Eagle asserts that paragraph eighteen is a forum selection clause which requires any contract dispute to be litigated in Cleveland County, Oklahoma.

3

In the Southern District Bankruptcy Court, Eagle filed a motion to dismiss for failure to state a claim or, in the alternative, a motion to sever Eagle.  *Id.*  The court denied Eagle's motion on August 1, 2007.  *Id.*

On September 20, 2007, Eagle filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Oklahoma ("Oklahoma Bankruptcy Court"), which automatically stayed any further proceedings against Eagle in this lawsuit.  *Id.*  Quicksilver then petitioned the Oklahoma Bankruptcy Court for relief from the stay.  *Id.*  The court granted Quicksilver's motion and allowed the litigation to continue in the Southern District Bankruptcy Court.[3]  Dkt. 26, Ex. 8.  Subsequently, the Southern District Bankruptcy Court confirmed Eagle and Blast's plan of reorganization.  Consequently, Eagle filed a motion to withdraw the reference.  *Id.*  On March 7, 2008, Judge Bohm recommended withdrawing the reference of this adversary proceeding.  Dkt. 1.  This court adopted his recommendation and withdrew the reference pursuant to an order entered on May 13, 2008.  Dkt. 9.

On May 14, 2008, Quicksilver filed a motion for partial summary judgment—the first of three pending motions before the court—asking the court to find that EDDO and/or Eagle materially breached the Rig Fourteen IADC Contract by utilizing a Chinese replica of a Lee C. Moore derrick on Rig Fourteen and to declare that the contract is void.  Dk. 12.  On May 20, 2008, Eagle filed a motion to transfer venue to the District Court for the Western District of Oklahoma or, in the alternative, to dismiss the case.  Dkt. 18.  On May 27, 2008, EDDO moved for partial summary

---

[3]  The Oklahoma Bankruptcy Court opined that allowing the Houston litigation to proceed would not interfere with the bankruptcy proceeding in the Western District of Oklahoma.  The court also found that "based upon the evidence before the court, proceeding with the Houston Litigation is in the best interests of judicial economy and will result in an expeditious and economical determination for the parties."  Dkt. 26, Ex. 8.

4

judgment asking the court to declare that Eagle's assignment of their rights and obligations under the IADC Contracts to EDDO in August 2006 was valid. Dkt. 23.

## MOTIONS FOR SUMMARY JUDGMENT

### Standard of Review

Summary judgment should be granted if the record, taken as a whole, together with any affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *N.Y. Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 347 (2001). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Little*, 37 F.3d at 1075. If the moving party fails to meet this burden, then they are not entitled to a summary judgment and no defense to the motion is required. *Id*. If the moving party meets this burden, however, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to

interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047.

Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075); *see also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996). The court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. *Anderson*, 477 U.S. at 249-51 (1986).

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. *Id.* at 248. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

## Assignment

In its motion for partial summary judgment, EDDO urges the court to declare that the assignment of the IADC Contracts from Eagle to EDDO was valid. EDDO argues that the assignment is valid because the contract language permits Eagle to freely assign the contract. Additionally, EDDO asserts that any failure to provide Quicksilver with prior notice of the

6

assignment does not impact its validity or effectiveness; thus, even if notice was not timely, Quicksilver's remedy is limited to monetary damages. Quicksilver, however, argues that requiring Eagle to give it prior written notice of any assignment gives Quicksilver "some" control over a proposed assignment, and at a minimum, requires advance notice as a condition precedent to any assignment of the contracts. Quicksilver asserts that Eagle failed to tender prior written notice of the assignment to EDDO; therefore, the assignment is void.

In the interest of fostering economic and commercial development, Oklahoma favors the free-alienability of contract rights.[4] *Beattie v. State*, 41 P.3d 377, 381 (Okla. 2002). Contract rights are presumed assignable, unless the parties expressly provide otherwise. *Id.* Whether or not a contract can be assigned turns upon the construction of the contract and the parties' intent. *Beattie*, 41 P.3d at 380-81; *In re Kaufman*, 37 P.3d 845, 853 (Okla. 2001). In determining the scope of the power to assign conferred upon the parties by the contract, the court applies the plain meaning of the words in the contract. *See* OKLA. STAT. tit. 15 § 160 ("The words of a contract are to be understood in their ordinary and popular sense . . . ."); *Lucas v. Bishop*, 956 P.2d 871, 874 (Okla. 1998). When the contract prohibits assignment in very specific and unmistakable terms, any purported assignment is void. *See In re Kaufman*, 37 P.3d at 851-53 & n.23 (a provision that is clear and unambiguous in its limitation of the power to assign is a valid restriction on alienability).

Each IADC Contract states, "Both parties may assign this contract with the prior written notice of the other." Dkt. 23, Ex. A-2 to -4. Accordingly, a plain reading of the clause reveals that Eagle was not prohibited from assigning its rights under the contract. Rather, Eagle could assign its IADC Contract rights but was also required to notify Quicksilver. Notably, an assignment without

---

[4] Pursuant to the paragraph eighteen of the IADC Contracts, the parties have agreed to apply the substantive laws of Oklahoma to the present dispute. Dkt. 23, Ex. A-2 to -4.

prior notice does not render the assignment void even where such notice of the assignment is expressly required by the contract. *See Chilson v. Cavanagh*, 160 P. 601, 604 (Okla. 1916) (a breach of a covenant not to assign without the other party's consent does not render the assignment invalid; the only remedy is for breach of the covenant); RESTATEMENT (SECOND) OF CONTRACTS § 322(2)(b) ("A contract term prohibiting assignment of rights under the contract, unless a different intention is manifested, gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective[.]"); *see also Beattie*, 41 P.3d 377, 381 (Oklahoma Supreme Court citing Restatement (Second) of Contracts provision regarding assignments). Thus, Eagle's assignment to EDDO was valid. EDDO's motion for partial summary judgment is, therefore, GRANTED.

### Breach

Quicksilver moves the court to find that EDDO materially breached the Rig Fourteen IADC Contract by utilizing a Chinese replica of a Lee C. Moore derrick, rather than an authentic Lee C. Moore derrick as required by the contract. As a result, Quicksilver urges the court to rescind the contract. Having reviewed the submitted pleadings and evidence, and the applicable law, the court finds a genuine issue of material fact as to whether the alleged breach by EDDO was material. Hence, Quicksilver's motion is DENIED.

### VENUE

### Motion to Transfer

Eagle seeks to transfer venue to the District Court for the Western District of Oklahoma pursuant to 28 U.S.C. §§ 1406(a) and 1412. Section 1406 permits a district court "in which is filed a case laying venue in the wrong division or district" to dismiss or transfer such case to "any district

or division in which it could have been brought." 28 U.S.C. § 1406(a). Because EDDO, the original debtor commencing a case under title 11, has its principal place of business in Houston, Texas, this court is a proper venue and § 1406 does not apply.[5] Section 1412 states, "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Transfer of venue pursuant to § 1412 requires a case-by-case analysis that is subject to broad discretion of the court. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27, 108 S. Ct. 2239 (1998).

The Bankruptcy Court for the Northern District of Texas transferred this case to the Southern District of Texas after finding the transfer appropriate under § 1412. Quicksilver, therefore, urges this court to apply the law of the case doctrine to preclude relitigating venue transfer. Dkt. 24. Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-816, 108 S. Ct. 2166, 2177 (1988). Courts should avoid reconsidering issues already decided in the absence of extraordinary circumstances, such as where the initial decision was "clearly erroneous or would work a manifest injustice." *Id.* at 817 (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8, 103 S. Ct. 1382 (1983)). Policies supporting the law of the case doctrine apply with "even greater force to transfer decisions than to decisions of

---

[5]  Proper venue for cases brought under title 11 is governed by 28 U.S.C. § 1408. Section 1408 provides,

> [a] case under title 11 may be commenced in the district court for the district . . . in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district . . . .

28 U.S.C. § 1408.

9

substantive law" because "transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Id.* at 815-16. Consequently, principles of law of the case should be applied to promote finality in venue disputes to minimize delay in adjudication of substantive complaints. Id. at 819.

On March 16, 2007, in the Northern District Bankruptcy Court, EDDO moved for transfer pursuant to 28 U.S.C. § 1412. Dkt. 26, Ex. 2. EDDO urged the court to transfer the case to the Southern District Bankruptcy Court, the court presiding over its title 11 case. *Id.* The Northern District Bankruptcy Court considered the parties' arguments and submitted evidence, and found that transfer was justified under § 1412. Dkt. 26, Ex. 4. In the pending motion, Eagle has not offered new evidence or reasoning to justify relitigation of appropriate venue. In addition, the court is not aware of, and Eagle did not present, any new controlling authority invalidating the Northern District Bankruptcy Court's decision to transfer venue to this district.

The Northern District Bankruptcy Court's transfer of the case to the Southern District Bankruptcy Court was not clearly erroneous and did not work a manifest injustice—EDDO's principal place of business is in Houston, Texas,[6] and Eagle did not respond or otherwise oppose the transfer.[7] Dkt. 26, Ex. 5. Eagle's motion to transfer is therefore DENIED.

---

[6] Notably, the Oklahoma Bankruptcy Court also found venue proper in Houston and opined that allowing the litigation to proceed in the Southern District of Texas would not interfere with Eagle's bankruptcy case in the Western District of Oklahoma. Dkt. 26, Ex. 8.

[7] Instead, Eagle "reserve[d] the right" to argue that the IADC contract contained a forum selection clause requiring litigation in Cleveland County, Oklahoma. *See infra* Motion to Dismiss section.

10

**Motions to Dismiss**

Invoking both Rule 12(b)(1) and 12(b)(3) of the Federal Rules of Civil Procedure, Eagle contends that dismissal is appropriate because paragraph eighteen of the IADC Contracts is a "forum selection" clause requiring litigation of the matter in Oklahoma state court. Without opining as to Rule 12(b)(1), the Fifth Circuit has held that motions to dismiss based on forum selection clauses may be addressed pursuant to Rule 12(b)(3). *See Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005); *Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907, 909 & n.3 (5th Cir. 1993). However, a Rule 12(b)(3) defense for improper venue can be waived. Rule 12(h) of the Federal Rules of Civil Procedure mandates that "a party waives any defense listed in Rule 12(b)(2)–(5) by . . . omitting it from a motion in the circumstances described in Rule 12(g)(2)." Pursuant to Rule 12(g)(2), "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." FED. R. CIV. P. 12(g)(2).

On July 11, 2007, in the Southern District Bankruptcy Court, Eagle moved to dismiss for failing to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 26, Ex. 6. Eagle fails to show why the Rule 12(b)(3) defense was unavailable at the time it moved for dismissal pursuant to Rule 12(b)(6). Therefore, because Eagle failed to assert the defense in its motion invoking Rule 12(b)(6), the defense is deemed waived pursuant to Rule 12(h). Eagle's motion to dismiss pursuant to Rule 12(b)(3) is DENIED.

Assuming that a forum selection clause may effect this court's subject-matter jurisdiction,[8] the court finds it need not decide whether paragraph eighteen of the IADC Contract warrants dismissal pursuant to Rule 12(b)(1) because it is not a forum selection clause. "[I]f language of a contract is clear and free of ambiguity the court is to interpret it as a matter of law, giving effect to the mutual intent of the parties at the time of contracting." *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 545 (Okla. 2003) (citing *Oxley v. Gen. Atl. Res.*, 936 P.2d 943, 945 (Okla. 1997); *Lewis v. Sac & Fox Tribe of Okla. Hous. Auth.*, 896 P.2d 503, 514 (Okla. 1995)). To find a contract ambiguous, the court must review the contractual language and determine that it is reasonably susceptible to at least two different constructions. *Id.* at 545-46. A court, however, "will not create an ambiguity by using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision." *Wynn v. Avemco Ins. Co.*, 963 P.2d 572, 575 (Okla. 1998). The "mere fact the parties disagree or press for a different construction does not make an agreement ambiguous." *Pitco Prod. Co.*, 63 P.3d at 545.

The IADC Contracts between Quicksilver and Eagle are form daywork drilling contracts. Although they are form contracts, the parties dispute whether paragraph eighteen, the "Governing Law" clause, is a forum selection clause requiring litigation in Cleveland County, Oklahoma.[9] The IADC Contracts, including the disputed provision, were accepted and signed by sophisticated parties.

---

[8] The Fifth Circuit has not opined as to the applicability of Rule 12(b)(1) to venue disputes stemming from forum selection clauses in binding written agreements. Notably, permitting objections to the forum to be asserted as challenges to a federal court's subject-matter jurisdiction would seemingly contradict the clear goal of encouraging quick resolution of venue disputes. *See Christianson*, 486 U.S. at 816; *see also* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

[9] All three IADC Contracts include an identical "Governing Law" provision in paragraph eighteen.

Dkt. 27, Ex. 1. Paragraph eighteen provides:

> GOVERNING LAW:
>
> This contract shall be construed, governed, interpreted, enforced and litigated, and the relations between the parties determined in accordance with the laws of County of Cleveland, State of Oklahoma.

*Id.* Eagle contends that the phrase "[t]his contract shall be . . . litigated . . . in accordance with the laws of County of Cleveland, State of Oklahoma" transforms the clause into a forum selection clause. The language of the "Governing Law" clause should not be interpreted by using a forced or strained construction, and should not be taken out of context or narrowly construed. *See Wynn*, 963 P.2d at 575. On its face, the clause purports to stipulate the "[g]overning [l]aw." The court finds that the aforementioned phrase—specifically, "litigated . . . in accordance with the laws"—can only be interpreted to require Oklahoma law to control legal disputes. Therefore, paragraph eighteen is a choice of law clause which does not effect this court's subject-matter jurisdiction.[10] Eagle's motion to dismiss pursuant to Rule 12(b)(1) is DENIED.

## Conclusion

For the foregoing reasons, EDDO's motion for partial summary judgment is GRANTED. Quicksilver's motion for partial summary judgment is DENIED. Eagle's motions to transfer venue pursuant to 28 U.S.C. §§ 1406(a) and 1412 are DENIED. Lastly, Eagle's motion to dismiss is also DENIED.

Signed at Houston, Texas on August 1, 2008.

_____
Gray H. Miller
United States District Judge

---

10   *See supra* notes 8-9 and accompanying text.

13